IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY ALBRITTON, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  3:23-CV-01723-N |
| | § | |
| HENDERSON COUNTY TEXAS, *et al.*, | § | |
| | § | |
|   Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Henderson County's motion to dismiss for improper venue, or in the alternative, to transfer venue [7], Southern Health Partner's ("SHP") motion to dismiss for failure to state a claim [13], and Philip R. Taft Psy.D & Associates PLLC and Philip R. Taft, Psy.D's (collectively the "Taft Defendants") motion to dismiss for failure to state a claim [15].  For the following reasons, the Court denies the motions.

I. ORIGINS OF THE DISPUTE

Plaintiff Mary Albritton filed this lawsuit as next friend of Cody Albritton in response to the alleged harm Cody suffered during his incarceration at the Henderson County Jail.  Cody was thirty at the time of the incident, but he has the "mental age" of a six-year-old.  Pl.'s Compl. ¶ 1 [1].[1]  In addition to Cody's intellectual disabilities, Cody

---

[1] The Court accepts the allegations in Plaintiff's complaint as true for the purpose of this Order.

ORDER – PAGE 1

also suffers from schizoaffective disorder, obsessive-compulsive disorder, chronic insomnia, and serious heart conditions including cardiomyopathy and chronic systolic heart failure. *Id.* Cody takes approximately eighteen daily medications to treat his psychological and physical ailments. *Id* at ¶ 16. Without his regular medications, Cody can be in considerable danger, for example, without his heart medication, his heart can go into atrial fibrillation. *Id.* Furthermore, Cody's intellectual disability prevents him from understanding what is happening to him or communicating to those around him the physical or psychological harm that results from missing his various medications. *Id.* Additionally, the fear that results from his lack of understanding of what is happening to him can trigger his schizoaffective disorder. *Id.*

Cody came to be in custody of the Henderson County Jail through a series of events beginning on January 17, 2022, when Plaintiff Mary Albritton, Cody's mother, made an emergency call seeking to have emergency medical services come calm Cody who was exhibiting uncontrollable and disruptive behavior. *Id.* at ¶ 17. Instead, law enforcement officers responded, and when Cody presented increasingly aggressive behavior, the officers arrested Cody. *Id.* at ¶ 18. The officers brought Cody to the hospital for medical clearance and a doctor cleared Cody to be taken to jail. *Id.* at ¶ 19. The doctor gave the officers a signed order for the jail to continue giving Cody his regularly prescribed medication along with a list of those medications. *Id.* at ¶ 20. The medical staff gave Cody none of these medications, despite Albritton providing an SHP nurse with the medications. *Id.* at ¶¶ 20, 39. Instead the jail substituted Cody's Xanax prescription with Librium, despite noting that Cody was likely to suffer withdrawal symptoms from not receiving his

ORDER – PAGE 2

usual dosage of Xanax. *Id.* at ¶ 39. Even more, Albritton alleges that Cody was not given the substituted Librium prescription. *Id.* at ¶ 40. Surveillance footage confirms he was not given any medication whatsoever after 7:30 am on the 18th of January, in clear contradiction of the jail's medication administration records. *Id.* The jail provided no video of Cody in the cell for his first nine hours at the jail and claimed to not have video of this time when asked to produce. *Id*. at ¶ 21 n.1.

Cody's stay at the Henderson County jail lasted approximately forty-eight hours. *Id.* at ¶ 44. During that time Cody was placed in the "violent cell" which had no bed, sink, toilet, or running water of any kind. *Id.* at ¶ 22. Inmates were expected to relieve themselves using a drain in the middle of the floor and the cell maintained a smell of human waste. *Id.* Cody's intellectual disability prevented him from understanding the drain's use, so Cody had diarrhea in his cell on the sleeping bench which no one cleaned up during Cody's nearly two-day detention. *Id.* at ¶ 28. Cody did not eat or drink anything during his entire stay. *Id.* at ¶ 26–27. The first evidence of the jail providing Cody with food or drink was in the morning of January 18th, which Cody slapped away because his psychological disabilities caused him to believe the jail was trying to poison him. *Id.* The jail did not provide Cody with anything to drink after this incident, which means Cody went more than 42 hours without anything to drink. *Id.* The jail provided Cody with food twice more during his stay, which Cody did not touch. *Id.* Despite Cody's clear signs of psychological distress, including an incident of him stripping off all his clothes, there are no records that correctional or medical staff checked Cody's status. *Id.* at ¶¶ 25, 47.

Regardless, it is without dispute that correctional and medical staff at the Henderson County jail had knowledge of Cody's psychological and physical ailments. There was a notation on his medical chart that he was supposed to be checked by medical staff every six hours. *Id.* at ¶ 25. Cody's mother informed the staff of Cody's physical and mental conditions and needed medications. *Id.* at ¶ 33. The jail staff noted on Cody's intake questionnaire that he had "mental retardation," acted like a child, and that Cody had reported hearing "voices that say bad things." *Id.* at ¶ 34. Last, the jail staff made a "continuity of care query," which confirmed that Cody received mental health services from the state. *Id.* at ¶ 35.

SHP is a private company that has a contract with the County to provide medical care at the jail. *Id.* at ¶ 43. All medical staff, other than mental health services staff, are employees of SHP. *Id.* Taft PLLC is a psychology practice that has a contract with the County to provide mental health services at the jail. *Id.* at ¶ 48. Dr. Taft is the primary practitioner of Taft PLLC. *Id.* Dr. Taft outsourced all of his clinician-level work to a Licensed Chemical Dependency Counselor Intern, Kevin Jeffries. *Id.* at ¶ 50. Jeffries's license does not legally qualify him to treat individuals in need of mental health care. *Id.* Furthermore, Albritton alleges that Taft provided no training to Jeffries, that Taft did not supervise Jeffries, and that Taft provided no policies or procedures for Jeffries to follow. *Id.* at ¶ 52-54. Despite the law prohibiting Jeffries from providing psychological services, Taft employed Jeffries to provide all mental health care at the jail, leaving inmates like Cody without access to any legally qualified mental health services. *Id.* at ¶ 60.

## II. Venue Is Proper Under 28 U.S.C. § 1391(b)(1)

Henderson County moves for dismissal arguing that venue is improper in the Northern District of Texas. Under 28 U.S.C. § 1391(b), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). As alleged in Albritton's complaint and not refuted by the Defendants, the Taft Defendants reside in the Northern District of Texas, Dallas Division, and SHP also resides in Texas pursuant to 28 U.S.C. § 1391(c)(2), because it conducts business in many locations across Texas, subjecting itself to the personal jurisdiction of the district courts where it conducts business. Pl.'s Compl. ¶ 12. Because all Defendants reside in Texas and Defendants reside specifically in the Northern District of Texas, venue is proper under section 1391(b)(1). Accordingly, the Court denies Henderson County's motion to dismiss for improper venue.

## III. The Court Declines to Transfer the Case

Henderson County moves in the alternative to its motion to dismiss for improper venue that the Court transfer the case to the Eastern District of Texas, Tyler Division for convenience. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In the Fifth Circuit, a district court has "broad discretion in deciding whether to order a transfer." *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987). When considering a motion to transfer venue, a district court must consider "a number of private and public interest factors, 'none of which can be said to be of dispositive weight.'" *In re Volkswagen of Am., Inc.*, 506 F.3d 376, 380

ORDER – PAGE 5

(5th Cir. 2007) (en banc) (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). The private factors include: (1) access to sources of proof; (2) the availability of the compulsory process power; (3) costs to witnesses of appearing; and (4) any other practical considerations affecting the ease and expense of trial. *Id.* at 380. The public interest factors include: (1) judicial economy; (2) interests associated with having local interests decided locally; (3) forum familiarity with the law at issue; and (4) problems arising from conflict of law. *Id.* In general, "[p]laintiff's choice of forum is entitled to deference" such that the burden falls on the party seeking a transfer to show "good cause" why the case should be relocated. *Id.* at 384. Accordingly, "[w]hen the transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed. When the transferee forum is clearly more convenient, a transfer should be ordered." *Id.*

Here, the Court finds Henderson County cannot show good cause for transfer because venue in the Tyler Division of the Eastern District of Texas would be, at best, no more convenient than this district. The private interest factors do not favor venue transfer. Henderson County does not refute Albritton's assertion that most, if not all, evidence is electronic. The difference in convenience for witnesses traveling to Tyler versus Dallas is not extreme. The burden of the slight added costs to the Defendants would be shifted onto the out of state Plaintiffs, and possibly create a heavier burden on Plaintiffs by moving the case further from a major airport if venue were transferred to Tyler. Similarly, the public interest factors do not favor transfer. The impact of transfer on the judicial economy factor is neutral at best. As for the "local interests being decided locally" factor, three out of four

of the defendants are "at home" in the Dallas division and Texas residents in general have a vested interest in operations of Texas jails, especially those near to where they live. Finally, there is no issue involving conflicts of law and the Dallas Division is just as familiar with the law that will govern this case as the Tyler Division. Accordingly, Henderson County fails to show "good cause" and the Court denies Henderson County's motion to transfer. The Court now turns to SHP and the Taft Defendants' individual motions to dismiss for failure to state a claim.

## I. LEGAL STANDARD FOR A 12(B)(6) MOTION

When ruling on a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pled facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to

relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

## II. THE COURT DENIES SHP'S MOTION

SHP asks the Court to dismiss Albritton's negligence claim against it because (1) Albritton did not provide any pre-suit notice in accordance with Texas Civil Practice and Remedies Code section 74.052, (2) Albritton did not sufficiently plead a duty of care owed to Cody by SHP, and (3) Albritton did not sufficiently plead any injury caused by SHP's alleged breach of duty.

As an initial matter, the Texas Supreme Court ruled that "an abatement of the cause of action for a duration of sixty days in the event that plaintiff fails to give the required notice" is the proper remedy for failing to meet this notice provision. *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex. 1983); *see also Rice v. Pfizer, Inc.*, 2006 WL 1932565, at *3 (N.D. Tex. July 7, 2006) ("Compliance with [§ 74.051] is mandatory; however, failure to comply will not result in dismissal of the claim."). Accordingly, the Court abates the case for sixty days due to Albritton's failure to give notice.

Next, SHP asks the court to determine that Albritton's state law negligence claim is a health care liability claim subject to Chapter 74 of the Texas Civil Practices and Remedies Code. Section 74.001(a)(13) defines a health care liability claim as:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to

    or death of a claimant, whether the claimant's claim or cause of action sounds
    in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(A)(13).  From this definition Texas courts identify the three elements for a health care liability claim as: "(1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death." *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012).  Albritton admits her pleadings "unquestionably fit[] the framework of a traditional medical malpractice claim."  Pl.'s Resp. SHP Mot. to Dismiss 4 [23].  But Albritton responds that SHP is a correctional medical provider, which gives SHP "additional duties to monitor and protect the health and safety of inmates when it is aware of specific risks to a particular inmate's health." *Id.*  The fact that a health care provider works in a correctional facility does not change the Court's analysis because the definition for medical care under section 74.001(a)(19) includes care performed while in confinement, like in a jail.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(19). ("'Medical care' means any act defined as practicing medicine . . . performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement.").  The Court holds that Albritton's negligence claim against SHP is in fact a health care liability claim.

ORDER – PAGE 9

As for the elements of a health care liability claim, SHP argues that Albritton failed to state a standard of care or any injury that occurred because of the breach of that standard of care. Under Texas law, "[t]he general duty of a physician or health care provider is to act as a reasonably prudent physician or health care provider would act in the same or similar circumstances." *Martinez v. Pfizer Inc.*, 388 F. Supp. 3d 748, 769 (W.D. Tex. 2019) (citing *Chambers v. Conaway,* 883 S.W.2d 156, 158 (Tex. 1993)). As an initial matter, SHP does not rebut Albritton's pleading that "SHP is vicariously liable for the conduct of [its] employees, which was performed entirely within the course and scope of their employment." Pl.'s Compl. ¶ 114. Albritton alleges that the SHP medical staff completely failed to monitor Cody's health, citing both the National Commission on Correctional Health Care ("NCCHC") standards and SHP's own written policies as standards of care. *See* Pl.'s Compl. ¶¶ 74–79. Albritton also alleges that "[a] reasonable medical professional adhering to the standard of care would not have allowed an at-risk individual with Cody's health conditions to languish for nearly two days in a violent cell, without food, water, basic human hygiene, bedding, or a reasonable opportunity to sleep." *Id.* at ¶ 80. SHP takes issue with Albritton's use of its own policies and NCCHC policies to allege a standard of care, and the Court notes that these policies do not prove a standard of care. However, at the motion to dismiss stage, the Court is tasked with accepting well pled facts as true, and the Court concludes that Albritton has met its burden of pleading facts regarding the standard of care owed to Cody by the SHP medical staff, and that the medical staff breached that standard of care.

ORDER – PAGE 10

The Court notes that this ruling does not dispose of Albritton's duty to serve on SHP expert witness testimony to establish the standard of care as required by section 74.351 of the Texas Civil Practice & Remedies Code. Albritton is beholden to following Rule 26(a)'s procedural requirements for disclosing an expert. *See Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 296–97 (5th Cir. 2016) (determining that Rule 26 controls over section 74.351 regarding the deadline for plaintiff to submit expert testimony); *see also* FED. R. CIV. P. 26(a). Accordingly, the Court holds that Albritton pled sufficient facts to establish a duty of care and breach of that duty of care.

Last, SHP argues that Albritton fails to allege that any actual injury to Cody occurred because of the alleged breach of the standard of care. But Albritton sufficiently pled facts that Cody suffered both physical and psychological harm by withholding of his regular medications and through SHP's failure to provide any continuity of care to Cody. Pl.'s Compl. ¶ 79. The SHP staff knew of both Cody's mental disabilities and doctor ordered medication, as indicated by Cody being on SHP's benzodiazepine's withdrawal protocol, jail staff noting on Cody's intake questionnaire that "they thought he had 'mental retardation' and was 'acting like a child,'" and that the "continuity of care query" returned an "exact match," identifying Cody as a person who received mental health services from state programs. Pl.'s Compl. ¶ 34-35, 123. Facts that support Cody's ongoing mental health crisis include his (1) inability to sleep for two nights straight, (2) refusal to eat or drink anything, (3) leaving a pool of diarrhea on the bench on which he was supposed to sleep, and (3) disrobing completely for no apparent reason. Pl.'s Compl. ¶¶ 24-28. Furthermore, the Court can reasonably infer that Cody may have suffered an episode of

ORDER – PAGE 11

atrial fibrillation from his lack of receiving his medications, as Cody takes the medication daily to prevent such an injury from occurring and the fact that atrial fibrillation can be caused by dehydration and stress — both conditions Cody experienced while in the jail. Pl.'s Compl. ¶ 45. Accordingly, Albritton pled sufficient facts to state an injury upon which relief can be granted and the court declines to dismiss Albritton's health care liability claim against SHP.

### III.  THE COURT DENIES THE TAFT DEFENDANTS' MOTION

The Taft Defendants ask the Court to dismiss Albritton's section 1983 claims, negligence claim, and Americans with Disabilities Act ("ADA") claim against them. The Taft Defendants also take issue that Albritton's pleadings use "Taft" to plead facts to state various section 1983 claims against Dr. Taft, the person, and Taft PLLC, the company and request the Court to order Albritton to replead to provide a more definite statement of her claims. As an initial matter, Albritton has not alleged a violation of the ADA by the Taft Defendants. *See* Pl.'s Compl. ¶¶ 82–97. Furthermore, as Albritton argues, Dr. Taft, as the owner and primary practitioner of Taft PLLC, makes decisions regarding mental health care at the PLLC. Therefore, Albritton refers to the Taft Defendants as Taft interchangeably and collectively because many of the same facts can be attributed to Dr. Taft and Taft PLLC depending on the type of section 1983 claim at issue. The Court can reasonably infer when such facts apply to Dr. Taft, the PLLC, or both depending on the claim at issue. The Court now turns to Albritton's section 1983 and negligence claims.

### A. *Albritton Sufficiently States a section 1983 Conditions of Confinement Claim*

The Taft Defendants argue that Albritton failed to state a claim against Dr. Taft in his individual capacity. But Albritton argues she states a claim for a "unlawful condition of confinement." Pl.'s Resp. Taft Defs.' Mot. to Dismiss 12 [15]. The Court holds that Albritton states sufficient facts to state a claim against Taft for his deliberate indifference to Cody's serious medical needs.

"A pretrial detainee's constitutional right to medical care, whether in prison or other custody," is derived from the Fourteenth Amendment. *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000). The legal standard applicable to Albritton's medical care claim depends on whether the alleged unconstitutional conduct is an "condition of confinement" or "episodic act or omission." *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (internal citations omitted). Albritton argues she brings a claim for conditions of confinement. When a pretrial detainee challenges "general conditions, practices, rules, or restrictions of pretrial confinement," courts evaluate whether the condition was "reasonably related to a legitimate governmental objective." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644–47 (5th Cir. 1996); *see also Bell v. Wolfish*, 441 U.S. 520, 539 (1979). "A condition is usually the manifestation of an explicit policy or restriction." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). Here Albritton pled sufficient facts that Dr. Taft contracted with medically unqualified Jeffries "to handle all of [Taft's] responsibilities under the contract" with Henderson County. Pl.'s Compl. ¶ 50. Albritton argues that Taft's abandonment of his patients at the jail amounted to "a wholesale denial

ORDER – PAGE 13

of mental health care to inmates at the jail and imposed a harmful condition that was 'not reasonably related to a legitimate goal.'" Pl.'s Resp. Taft Defs.' Mot. to Dismiss 113. The Court agrees. The system for inmates to access mental health care at the Henderson County Jail amounted to a condition that left the inmates with no avenues to access mental health care and this dereliction of care cannot be reasonably related to any legitimate governmental objective.

The Taft Defendants argue that Taft cannot be liable under section 1983 because Albritton "fails to allege the Dr. Taft even knew about Mr. Albritton's confinement in the violent cell, must less ignored him or treated him incorrectly," and without knowledge of Cody, the Dr. Taft cannot be deliberately indifferent to Cody's serious risk of harm. Taft Defs.' Mot. to Dismiss 3. The Taft Defendants are correct that "[t]o prevail on a conditions of confinement claim, an inmate must prove that prison officials acted, or failed to act, with deliberate indifference to a substantial risk of serious harm" *United States v. Wright*, 2020 WL 6710802, at *3 (N.D. Tex. Nov. 13, 2020); *see also Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (deliberate indifference is an element of a conditions of confinement claim); *United States v. Gonzales*, 436 F.3d 560, 573 (5th Cir. 2006) (deliberate indifference is an element of a denial of medical treatment claim). Furthermore, "[f]or an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see also Nottingham v. Richardson*, 499 Fed. Appx. 368, 376 (5th Cir. 2012) ("Deliberate indifference requires

ORDER – PAGE 14

knowledge of a medical condition."). But "[u]nder exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see also Farmer*, 511 U.S. at 840 ("[T]he concept of constructive knowledge is familiar enough that the term 'deliberate indifference' would not, of its own force, preclude a scheme that conclusively presumed awareness from a risk's obviousness.").

Albritton does not allege that Dr. Taft had any knowledge of Cody's presence at the Henderson County Jail, Cody's medical condition, the lack of medical care Cody received, Cody's placement in the violent cell, or the actual conditions of the violent cell. Albritton does allege that Taft (1) contracted with the County to provide mental health care services, (2) "had Kevin Jeffries handle all of Taft's responsibilities under contract" with Henderson County, (3) that Jeffries as a licensed chemical dependency counselor intern was not qualified or legally allowed under Texas law to provide psychological services, (4) that Taft provided no training or supervision to Jeffries, (5) that Taft provided no mental health care at the jail at all, and (6) that there was no system in which Jeffries could contact Taft for help or advice regarding an inmate in a mental health crisis. Pl.'s Compl. ¶¶ 50-66. Ergo, Taft was aware of the fact that no one at the jail was qualified to provide mental health assistance for an individual like Cody experiencing a mental health crisis. Taft was aware of facts in which he could reasonably conclude that a risk of harm existed for all people in confinement in need of mental health services.

The substantial risk of harm of Taft flouting his responsibilities to the individuals in need of mental health services while at the jail and outsourcing mental health care to an

unqualified individual is so obvious that it does not matter if Taft had actual knowledge of Cody specifically or drew the inference that a substantial risk of harm existed. Taft cannot escape liability under the guise of "lack of knowledge" when he contracted with Henderson County to provide mental health care but had no system in place to actually provide the contracted mental health care. It is obvious that one day an individual would be confined at the jail and that no one at the jail was qualified to provide mental health care, resulting in that person's serious harm. Taft's complete abandonment of individuals like Cody in need of mental health services is an example of an exceptional circumstance that rises to deliberate indifference even without Taft's direct knowledge of Cody and Cody's risk of harm. Accordingly, the Court holds that Albritton pled sufficient facts to establish a section 1983 conditions of confinement claim against Dr. Taft.

### B. Albritton Pled Sufficient Facts for a Supervisory Liability Claim

Albritton pled sufficient facts to establish a supervisory liability claim against the Taft Defendants. To recover based on supervisory liability, the plaintiff must prove "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). "To hold a supervisory official so liable, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith*, 158 F.3d at 911–12 (citation omitted). Albritton adequately pled that Taft outsourced all his clinical psychiatry work to Jeffries, making Jeffries Taft's subordinate official. Taft had no system in place to train

ORDER – PAGE 16

Jeffries, oversee Jeffries's work, or have Jeffries contact Taft if a mental health emergency arose. Pl.'s Compl. ¶¶ 50–55. This complete lack of training and supervision left Cody without access to any legally qualified mental health care while in jail, in direct violation to Cody's constitutional right to having his serious mental health needs met.

Typically to establish the deliberate indifference prong for a failure to train claim, the plaintiff must show a pattern of similar constitutional violations. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.") (quoting *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). But *City of Canton* left a narrow set of circumstances where the risk of a constitutional violation due to a failure to train or supervise is so obvious as to rise to deliberate indifference. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, n.10 (1989) ("[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."). Albritton alleges that "Taft's system of mental health care at the jail was grossly inadequate and failed to comply with any recognized standards for correctional mental health care . . . by providing no legally qualified mental health care at the jail at all." Pl.'s Compl ¶¶ 101–02. Albritton further alleges that "no one at the jail was qualified to recognize mental health emergencies when they occurred, and Taft had no policies in place to deal with any such emergencies." *Id*. at ¶ 103. The risk that Taft's dereliction of duty to oversee mental health care at the jail would lead to inmates receiving no mental health care is so obvious as to rise to deliberate

ORDER – PAGE 17

indifference. Accordingly, the Court holds that Albritton sufficiently pled facts to state a claim for supervisory liability.

### C. Albritton States Sufficient Facts for a Monell Liability Claim

The Taft Defendants argue that Albritton failed to state a section 1983 claim against Taft, PLLC because private companies cannot be vicariously liable under section 1983. Though the Taft Defendants are correct that section 1983 claims are generally only available against state actors, private companies can be subject to *Monell* liability under certain circumstances. "The standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function." *Olivas v. Corr. Corp. of Am.*, 408 F. Supp. 2d 251, 254–55 (N.D. Tex. 2006) aff'd, 215 F. App'x 332 (5th Cir. 2007); *see also Rodriguez v. S. Health Partners, Inc.*, 2020 WL 2928486, at *7 n.4 (N.D. Tex. 2020) (determining that *Monell* liability could apply to SHP — a private corporation which contracted with the County to provide medical health care).

Municipal or corporate liability under section 1983 requires proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978)). Albritton alleges, that "the County fully delegated policymaking authority to Taft and/or collaborated with him in instituting their policies and practices." Pl.'s Compl. ¶ 49. Based on the allegations discussed in the Court's discussion of conditions of confinement in Section VI.A, *supra*, Albritton has alleged facts plausibly establishing that Taft and/or

ORDER – PAGE 18

Taft PLLC created a policy or custom of providing no mental health care services to the inmates at the Henderson County Jail. Cody receiving no mental health care is the constitutional violation, and Taft's derelict policy of providing no mental health care to inmates of the jail is the driving force behind this constitutional violation. Accordingly, the Court holds that Albritton states sufficient facts to state a *Monell* section 1983 claim against Taft PLLC.

### D. Albritton Adequately Pled a Health Care Liability Claim Against the Taft Defendants

For the same reasons in Section V, *supra*, the Court holds that Albritton's negligence claim against the Taft Defendants is in fact a health care liability claim, not just a negligence claim. As previously stated, the elements for a health care liability claim are "(1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death." *Loaisiga*, 379 S.W.3d at 255. Like SHP, the Taft Defendants argue that Albritton fails to "allege (1) what the standard of care is required of the Taft Defendants, (2) any breach of the standard of care by the Taft Defendants, or (3) how any act or omission of the Taft Defendants proximately caused Plaintiff's damages." Taft Defs.' Mot. To Dismiss 7. The Court disagrees. The same standard of care allegations in Albritton's complaint apply to the Taft Defendants as apply to SHP. Moreover, the Taft Defendants allegedly breached their duty of care by providing

no mental health care services at all. Finally, the Taft Defendants breach of duty left Cody without access to mental health care causing him both psychological and physical harm. Accordingly, the Court holds that Albritton pled sufficient facts to state a health care liability claim.

## CONCLUSION

Because the Northern District of Texas Dallas Division is a proper venue and Henderson County fails to show good cause for transfer, the Court denies the County's motion to dismiss pursuant to rule 12(b)(3) or to transfer. Furthermore, the Court Concludes that Albritton stated plausible claims against SHP and the Taft Defendants, and thus denies SHP and the Taft Defendants individual motions to dismiss pursuant to Rule 12(b)(6). The Court abates the case for sixty days due to Albritton's failure to give pre-suit notice in accordance with Texas Civil Practice and Remedies Code section 74.052.

Signed April 23, 2024.

David C. Godbey
Chief United States District Judge